UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

JAMES DIEFFENBAUCH, individually
and on behalf of all similarly situated,

                              Plaintiff(s),

    -against-                                            8:17-CV-1180 (LEK/CFH)

RHINEHART RAILROAD
CONSTRUCTION, INC.,

                              Defendant.

## MEMORANDUM-DECISION AND ORDER

**I.     INTRODUCTION**

        Plaintiff James Dieffenbauch commenced this lawsuit, both individually and on behalf of all others similarly situated, against his former employer, defendant Rhinehart Railroad Construction, Inc. Dkt. No. 1 ("Complaint"). Plaintiff alleges that Defendant implemented a "No Pay for Travel" policy in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*. Now before the Court is Plaintiff's motion for conditional certification of a collective action under the FLSA. Dkt. No. 10 ("Motion"); see also Dkt. Nos. 10-1 ("Memorandum"), 25 ("Opposition"), 26 ("Reply"). For the reasons that follow, Plaintiff's Motion is granted in part.

**II.    BACKGROUND**

        The facts described in this section are drawn from the Complaint and the declarations Plaintiff submitted in support of the Motion. See Lynch v. United Servs. Auto. Ass'n, 491 F. Supp. 2d 357, 368 (S.D.N.Y. 2007) (noting that a motion for conditional certification is to be adjudged with reference to the "plaintiff['s] pleadings and affidavits"). Defendant, a "foreign

company" that "provides railroad construction and maintenance services" throughout the United States, id. ¶¶ 2–3, 11, hired Plaintiff as an Operator/Laborer in June 2016, id. ¶¶ 4, 8–9, 14; Dkt. No. 10-5 ("Dieffenbauch Declaration") ¶ 2. Between that date and October 2017, Plaintiff worked for Defendant in St. Lawrence County, New York, as well as in other states. Compl. ¶¶ 4–6. His duties primarily consisted of manual labor on various railroad construction and maintenance projects. Id. ¶ 9. In order to get to and from those work sites—which Defendant assigned on a weekly basis to Plaintiff and the other Operator/Laborers it employed, Dkt. No. 10-6 ("Dailey Declaration") ¶ 16—Plaintiff was also compelled as part of his job to engage in "extensive travel." Dieffenbauch Decl. ¶ 3.

While working for Defendant, Plaintiff was paid an hourly wage. Id. ¶ 10. In the event that Plaintiff worked more than forty hours in a given week, he was paid "time and one half" for each additional hour worked. Id. ¶¶ 5, 11. However, as a result of Defendant's "No Pay for Travel" policy, Plaintiff claims that he received less overtime pay than he was owed during "weeks when [Plaintiff's] travel away from home combined with [his] jobsite hours . . . total[ed] more than forty (40) hours." Id. ¶ 13. In particular, in circumstances when Plaintiff worked more than forty hours in a given week, he was denied overtime pay for hours spent traveling (a) from his home to assigned project locations; (b) between assigned project locations; and (c) from assigned project locations back to his home. Id. ¶¶ 8, 17.

On October 23, 2017, Plaintiff filed his Complaint, which alleges that Defendant's "No Pay for Travel" policy violated the FLSA and requests "unpaid overtime, liquidated damages, [declaratory relief], attorneys' fees[,] and costs." Compl. at 5–6.  Defendant answered on November 21, 2017, raising a number of affirmative defenses. Dkt. No. 6 ("Answer") ¶¶ 11–42.

Then, on November 29, 2017, Plaintiff filed the present Motion, seeking conditional certification of a collective action pursuant to § 216. Mot. Specifically, the Motion asks the Court to conditionally certify:

> [A] class of current and former [Operator/Laborers[1]] who work(ed) for Defendant from October 2014 to the present, who worked more than forty (40) hours per week and were paid an hourly rate plus overtime, but not paid for travel time from: (a) [their homes] to assigned project location[s]; (b) one assigned project location to another assigned project location; and/or (c) an assigned project location back to [their homes].

Mot. at 20. In addition to a Memorandum, Plaintiff also attached to the Motion (1) two proposed notices to be sent to potential opt-in plaintiffs, Dkt. Nos. 10-2 ("Proposed Initial Notice"), 10-3 ("Proposed Second Notice"); (2) a proposed consent form, Dkt. No. 10-3 ("Proposed Consent Form"); (3) the Dieffenbauch Declaration; and (4) a declaration from Jeremy Dailey, Dailey Decl., another Operator/Laborer formerly employed by Defendant who has opted-in to Plaintiff's suit, Dkt. No. 4. Two days later, on December 1, 2017, Plaintiff also submitted a declaration from Jackey Cobb, Dkt. No. 11 ("Cobb Declaration"), a third Operator/Laborer formerly employed by Defendant who has also opted-in to this suit, Dkt. No. 5.

The Dailey and Cobb Declarations contain largely the same factual allegations as the Complaint and Dieffenbauch Declaration. However, the Dailey Declaration indicates that Dailey worked for Defendant at multiple work sites located in Pennsylvania, North Carolina, New York,

---

[1] Plaintiff's pleadings and declarations variously define the relevant class of Defendant's employees as "Railroad Workers," Compl. ¶ 14, "manual laborer[s]," id. ¶ 9, and "Operator/Laborers," id. ¶ 8; Dieffenbauch Decl. ¶ 2. For the sake of clarity, the Court will use the term "Operator/Laborer" to refer to those employees who performed manual labor and "day-to-day work" for Defendant, Opp'n ¶ 7, and who therefore could be included as part of the putative class.

and Massachusetts, Dailey Decl. ¶ 7, while the Cobb Declaration indicates that Cobb worked for Defendant at multiple work sites located in Maryland, New York, Massachusetts, and Pennsylvania, Cobb Decl. ¶ 8. Both declarations further state that, at all of the job site locations where Cobb and Dailey worked, they and the Operator/Laborers they worked with were all subjected to the same "No Pay for Travel" policy and were therefore "not paid overtime wages every time [their] drive time and jobsite time combined to over 40 hours in a week." Cobb Decl. ¶ 15; see also Dailey Decl. ¶¶ 10, 17. Dailey indicates that he knows the other Operator/Laborers he worked with were paid according to the same policy because "[t]he other [Operator/Laborers he] worked with complained about not being paid for all of their travel time." Dailey Decl. ¶ 15. Similarly, the Cobb Declaration states that he knew that "[t]he other [Operator/Laborers he] worked with weren't paid for all of their hours . . . because [they] talked about it at work." Cobb Decl. ¶ 20.

**III.    LEGAL STANDARD**

The FLSA allows workers to sue on behalf of both themselves and "other employees similarly situated." § 216(b). Courts in the Second Circuit "apply a two-step method in certifying a FLSA collective action." Johnson v. Wave Comm GR LLC, 4 F. Supp. 3d 453, 457 (N.D.N.Y. 2014). The first, "conditional" step "involves the court making an initial determination to send notice to potential opt-in plaintiffs who may be 'similarly situated' to the named plaintiffs with respect to whether a FLSA violation has occurred." Myers v. Hertz Corp., 624 F.3d 537, 555 (2d Cir. 2010) (citations omitted). "The court may send this notice after plaintiffs make a 'modest factual showing' that they and potential opt-in plaintiffs 'together were

victims of a common policy or plan that violated the law.'" Id. (quoting Hoffman v. Sbarro, Inc., 982 F. Supp. 249, 261 (S.D.N.Y. 1997)).

The burden on plaintiffs for obtaining conditional certification is "minimal," in part because "'the determination that the parties are similarly situated is merely a preliminary one' and may be modified or reversed at the second [] certification stage." Lynch, 491 F. Supp. 2d at 368 (quoting Lee v. ABC Carpet & Home, 236 F.R.D. 193, 197 (S.D.N.Y. 2006)). A plaintiff may rely on "pleadings, affidavits, and declarations" in support of a motion for conditional certification, though a court, in evaluating an application for conditional certification, should "not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations." Id. (citing Barrus v. Dick's Sporting Goods, Inc., No. 05-CV-6253, 2006 WL 3373117, at *4 (W.D.N.Y. Nov. 3, 2006)); see also Young v. Cooper Cameron Corp., 229 F.R.D. 50, 54 (S.D.N.Y. 2005) ("The focus of [the conditional certification] inquiry . . . is not on whether there has been an actual violation of law but rather on whether the proposed plaintiffs are 'similarly situated' . . . with respect to their allegations that the law has been violated." (citation omitted)).

That said, conditional certification "is not automatic." Brown v. Barnes & Noble, Inc., 252 F. Supp. 3d 255, 261 (S.D.N.Y. 2017) (citations omitted). "Although [a] plaintiff['s] factual showing is modest, it cannot be satisfied by unsupported assertions or conclusory allegations." Id. (citing Myers, 624 F.3d at 555; Morales v. Plantworks, Inc., No. 05-CV-2349, 2006 WL 278154, at *2–3 (S.D.N.Y. Feb. 2, 2006)). On the contrary, a plaintiff "must offer actual evidence of a factual nexus between his own experience and the experiences of those he claims as 'similarly situated.'" Mata v. Foodbridge LLC, No. 14-CV-8754, 2015 WL 3457293,

5

at *2 (S.D.N.Y. June 1, 2015) (internal quotations marks and citation omitted). In addition, in the event that a plaintiff seeks a "geographically expansive" conditional certification, Fernandez v. Sharp Mgmt. Corp., No. 16-CV-551, 2016 WL 5940918, at *4 (S.D.N.Y. Oct. 13, 2016), courts have required, prior to certification, that plaintiffs provide "sufficient evidence that [] employees [at the other locations] were subject to the same allegedly unlawful policies." Juarez v. 449 Rest., Inc., 29 F. Supp. 3d 363, 370 (S.D.N.Y. 2014).

## IV.    DISCUSSION

### A. Common Policy or Plan that Violates the Law

In determining whether the criteria for conditional certification have been satisfied, the court finds instructive Abney v. R.J. Corman R.R. Grp., LLC, No. 17-CV-260, 2017 WL 3723657 (E.D. Ky. Aug. 29, 2017). Apprised of a near-identical procedural posture and fact pattern, the district court for the Eastern District of Kentucky determined that a class of railroad workers who were allegedly not paid for all of their travel time between their homes and various work sites—at least three of whom had opted-in to the lawsuit at the time of the court's decision—satisfied the conditional certification standard, because all of the potential plaintiffs "suffer[ed] from a single, FLSA-violating policy," proof of which would "prove[] a violation as to all the plaintiffs." Id. at *2.[2]

---

[2] Defendant rightly points out that, unlike in the present case, the Abney plaintiff also provided the court with a letter sent by the defendant to all of its employees indicating that it had "determined that a bona [fide] dispute regarding overtime pay for travel hours existed." Abney, 2017 WL 3723657, at *2. However, the Court interprets the Abney court's decision granting conditional certification as focused primarily on declarations from former employees, not the letter. Id.

Similarly, Plaintiff has provided the Court with declarations from himself and two of Defendant's other former employees. Those filings indicate that, while working for Defendant, the declarants were subject to a "No Pay for Travel" policy that seems effectively identical to that which was analyzed by the Abney court. The Complaint further states—albeit through imprecise and somewhat conclusory language—that the allegedly infringing policy was imposed upon all of the Operator/Laborers employed by Defendant, all of whom were expected to "travel from project locations away from home and back to home without compensation." Compl. ¶¶ 3, 14–15. Finally, the Dailey and Cobb Declarations also state that many of the other Operator/Laborers that they worked with throughout work sites in Pennsylvania, North Carolina, New York, Massachusetts, and Maryland also complained of the same allegedly infringing policy. Dailey Decl. ¶¶ 7, 10; Cobb Decl. ¶¶ 8–9. Taken together, those allegations are sufficient to carry Plaintiff's minimal burden at the conditional certification stage. See Mazur v. Olek Lejbzon & Co., No. 05-CV-2194, 2005 WL 3240472, at *5 (S.D.N.Y. Nov. 30, 2005) (finding that three declarations—submitted by the named plaintiff and two opt-in plaintiffs—satisfied the minimal burden for conditional certification because they tended to show that the declarants (1) were paid in violation of the FLSA; and (2) "had personal knowledge," through conversations with other employees, that those other employees were also paid in a similar manner).

In its Opposition, Defendant focuses on Department of Labor regulation 29 C.F.R. § 785.39, which defines the situations in which an employee's travel time is compensable and states that "[t]ravel away from home is clearly worktime when it cuts across the employee's workday." Therefore, because the Complaint fails to specifically allege that Plaintiff's unpaid travel time "cut across [his] workday," Defendant argues that the alleged payment scheme "in

7

and of itself is <u>not</u> a violation of the FLSA." Opp'n at 7. Defendant also points to a number of affidavits submitted in support of its Opposition—signed by, *inter alia*, Richard Rhinehart, one of Defendant's executive officers, as well as a number of Operator/Laborers—in arguing that Plaintiff's version of events is unproven. <u>Id.</u>; <u>see also</u> Dkt. Nos. 25-1 ("Operator/Laborer Declarations"), 25-2 ("Rhinehart Declaration").

Even if the Court lent credence to either the Rhinehart Declaration or the Operator/Laborer Declarations—which, though signed by non-attorneys, include questionable legal conclusions (e.g., statements indicating that the declarants were "paid for some of [their] travel time consistent with, or beyond, what the law requires," Operator/Laborer Decs. at 4–11)—the Court at this stage of the litigation must focus its attention solely on Plaintiff's "pleadings, affidavits, and declarations," and refrain from "resolv[ing] factual disputes, decid[ing] substantive issues going to the ultimate merits, or mak[ing] credibility determinations." <u>Lynch</u>, 491 F. Supp. 2d at 368. Likewise, Defendant's contention that the unpaid hours are non-compensable because they do not "cut across [Plaintiff's] workday" constitutes precisely the sort of substantive determination that must be avoided at this stage. Discovery has yet to commence, the record is far from fully developed, and the certification requested by Plaintiff is merely conditional. <u>See</u> <u>Abney</u>, 2017 WL 3723657, at *2 (declining to address the defendant's merit-based arguments because "[d]iscovery is in its infancy and the record is too limited for such analysis").

Therefore, the Court finds that Plaintiff has provided sufficient proof of a factual nexus "between his own experience and the experiences of those he claims as 'similarly situated'" to carry his burden for conditional certification. <u>Mata</u>, 2015 WL 3457293, at *2 (citation omitted).

**B. Geographic Scope of the Conditional Class**

Defendant also argues that, in the event that the Court decides that conditional certification is appropriate, it should limit the class by geography. Opp'n at 8–10. Specifically, Defendant contends that Plaintiff's submissions "lack sufficient particularity to justify conditional certification across all of [Defendant's] job-sites," "[g]iven the multitude of differences between" those sites. Id. at 8. To highlight those differences, Defendant states that, as a company, it

> has worked on about one hundred (100) different projects in the last three (3) years. Each project is unique. This is not a case in which each location operates identically. These are discrete projects with unique circumstances with varying supervisors for many different clients. There is no regular set schedule and no set staffing levels for each project. . . . [Defendant] has no policy applicable to all its [Operator/Laborers] regarding travel time.

Id. (internal citation omitted). Defendant also points out that, because some of the Operator/Laborers it employed were hired locally and not required to travel, "they were not [] subject to the same alleged policy or plan that violated the law." Id. at 9.

The Court agrees that the geographic scope of the conditional class should be limited to comport with the factual support that has been provided by Plaintiff. Although it is possible to infer, based on the allegations in the Complaint, that Plaintiff believes that Defendant's "No Pay for Travel" policy was imposed upon all of the Operator/Laborers it employed nationwide, Compl. ¶¶ 3, 14–15, those allegations alone are not sufficiently specific to merit certification of a nationwide class. Plaintiff fails to provide any corroborating evidence—in the form of, for example, sworn statements and/or corporate documents regarding Defendant's salary scheme(s)—that Defendant's policy extended beyond the five states identified in the Dailey and

9

Cobb Declarations: Pennsylvania, North Carolina, New York, Massachusetts, and Maryland. Dailey Decl. ¶¶ 7, 10; Cobb Decl. ¶¶ 8–9.

The Court will therefore limit the class conditionally certified through this Memorandum-Decision and Order to those of Defendant's work sites that are located within those five states. See Brown, 252 F. Supp. 3d at 266–68 (declining to conditionally certify a nationwide class of approximately 1,100 employees based solely on nine declarations from opt-in plaintiffs indicating that they had heard, through observations and discussions with other staff members, that the defendant's allegedly infringing policies applied nationwide); Morris v. Lettire Constr. Corp., 896 F. Supp. 2d 265, 270–71 (S.D.N.Y. 2012) (conditionally certifying a nationwide class after plaintiffs (1) alleged idiosyncratic conduct by the defendant across multiple locales; (2) provided proof of central control by the defendant of all its work sites; and (3) submitted corroborating evidence of a company-wide policy). If, however, discovery reveals additional support for Plaintiff's claim that a nationwide class is appropriate, then Plaintiff may renew his motion.

### C. Plaintiff's Proposed Notice and Consent Documents

Along with the Motion, Plaintiff has also submitted to the Court a Proposed Initial Notice, Proposed Second Notice, and Proposed Consent Forms. Defendant raises several objections to portions of these documents. Opp'n at 11–12.

First, Defendant "objects to the inclusion of any and all [Operator/Laborers] that worked for [Defendant]" in language throughout the Proposed Initial and Second Notices as well as the Proposed Consent Forms, given its argument that the geographic scope of conditional certification should be limited. Id. at 11. The Court agrees and, for the reasons stated above,

directs Plaintiff to revise the Proposed Initial Notice, Proposed Second Notice, and Proposed Consent Forms to specify that the certified class is limited to employees that worked in Pennsylvania, North Carolina, New York, Massachusetts, and/or Maryland.

Second, Defendant argues that the first paragraph of Plaintiff's Proposed Initial Notice, Proposed Second Notice, and Proposed Consent Forms, as well as any of the sections in those documents titled "Description of the Lawsuit," "should be edited to more accurately state the law." Id. at 11–12. Specifically, Defendant asks the Court to revise the notice to "make clear that the lawsuit applies only to travel away from the home community that was compensable if it cuts across the workday." Id. Once again, the Court has already addressed Defendant's concerns, and determined that it is unwilling, at this stage of the litigation, to limit Plaintiff's suit as Defendant requests. Defendant's second objection is therefore overruled.

Third, Defendant asks the Court to revise the Proposed Initial Notice, Proposed Second Notice, and Proposed Consent Forms to reflect a two-year statute of limitations, rather than the three-year period currently contemplated by those documents. Id. at 12. According to § 255(a), the statute of limitations for any suit brought under the FLSA is two years, "except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." Defendant therefore contends that, because it has submitted documents indicating that it does, in fact, pay employees for some of their travel time, the Court should find that Defendant's alleged failure to comply with the FLSA was not willful. Opp'n at 12. However, the question of whether Defendant's alleged violation was "willful" is a substantive question best reserved for a later stage, when the parties have had an opportunity to conduct discovery and

further develop the record. Defendant's third objection is therefore overruled, and a three-year statute of limitations is, for the moment, deemed appropriate.

## V.   CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Defendant's Motion (Dkt. No. 10) is **GRANTED in part**; and it is further

**ORDERED**, that the proposed collective FLSA class is conditionally certified as:

> All persons employed by Rhinehart Railroad Construction, Inc. as "Railroad Workers" ("Operators/Laborers") in Pennsylvania, North Carolina, New York, Massachusetts, and/or Maryland from October 2014 to the present, who worked more than forty (40) hours per week and were paid an hourly rate but were not paid for travel time from: (a) their home to an assigned project location; (b) one assigned project location to another assigned project location; and/or (c) an assigned project locations back to their home.

and it is further

**ORDERED**, that, within **thirty days** of this Memorandum-Decision and Order, Defendant shall produce to Plaintiff a list containing the full names, job titles, last known addresses, and dates of employment for all putative class members who worked as Operator/Laborers for Defendant in Pennsylvania, North Carolina, New York, Massachusetts, and/or Maryland between October 2014 and the present; and it is further

**ORDERED**, that any notice sent by Plaintiff to any of the individuals disclosed by Defendant as putative class members shall be sent by first-class mail; and it is further

**ORDERED**, that the individuals disclosed by Defendant as putative class members shall have **sixty days** from the date the notices are mailed to file a form opting-in to this action; and it is further

**ORDERED**, that except as outlined herein, neither party shall contact any individual disclosed by Defendant as a putative class member for reasons related to this litigation until after such individual has filed a form indicating their consent to opt-in to this lawsuit; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and Order on all parties in accordance with the local rules.

**IT IS SO ORDERED.**

DATED:    August 30, 2018
          Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge