UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JAMES DIEFFENBAUCH, Individually & on
behalf of all similarly situated,

      Plaintiff,

 v.

RHINEHART RAILROAD
CONSTRUCTION, INC.,

      Defendant.
_____

Civ. Action No.: 17-cv-01180

---

**DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO
PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

---

UNDERBERG & KESSLER LLP
*Attorneys for Defendant*
300 Bausch & Lomb Place
Rochester, New York 14604
Telephone: (585) 258.2800

Alina Nadir, Esq., of Counsel
Paul F. Keneally, Esq., of Counsel

**PRELIMINARY STATEMENT**

Defendant submits this Memorandum of Law in opposition to Plaintiff's Motion for Partial Summary Judgment. For the reasons described in this Memorandum, as well as the supporting Affidavit of Richard Rhinehart, sworn to August 3, 2020 ("Rhinehart Aff.") and the accompanying Attorney Affirmation of Alina Nadir, Esq., dated August 4, 2020 ("Nadir Aff."), Plaintiff's motion should be denied in its entirety.

**FACTUAL BACKGROUND**

Defendant refers the Court to its Responses to Plaintiff's Statement of Material Facts and Defendant's Additional Material Facts.

**ARGUMENT**

**I.      Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FRCP 56(a). "A fact is material if it might affect the outcome of the suit under the governing law and a dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Hogan v. Lewis Cty.*, 2020 U.S. Dist. LEXIS 95244, at *12 (N.D.N.Y. June 1, 2020) (Kahn, J.). "The party seeking summary judgment bears the burden of informing the court of the basis for the motion and identifying those portions of the record that the moving party claims will demonstrate the absence of a genuine issue of material fact." *Id.*, at *12-13. A court must "draw all reasonable inferences in favor of the nonmoving party." *Id.*, at *13.

## II.  Plaintiff Cannot Establish That Defendant Violated the FLSA as a Matter of Law.

In his motion for partial summary judgment, Plaintiff has not met his burden of demonstrating the absence of a genuine issue of material fact on any of his claims. Plaintiff's memorandum contains statements that are not supported by the evidence. And his Statement of Material Facts contains repeated misrepresentations of the testimony provided in this matter in an attempt to make it appear as though his allegations are undisputed.  In fact, many disputed material facts remain in this matter.  And when all reasonable inferences are drawn in favor of Rhinehart, the non-moving party, it is clear that summary judgment is not appropriate.

Plaintiff begins his argument with a broad statement "that Defendants *(sic)* did not compensate Plaintiffs for all travel time whether Plaintiff *(sic)* was assigned to a 'local' job or a 'traveling' job."  Plaintiff then cites to relevant federal regulations while failing to acknowledge that both of those regulations describe instances where travel time is not compensable.

Plaintiff alleges that he and similarly situated Plaintiffs were not paid for travel that is all in a day's work as required by 29 C.F.R. 785.38 and for travel away from the home community as required by 29 C.F.R. 785.39.

29 C.F.R. 785.38 provides:

> Time spent by an employee in travel as part of his principal activity, such as travel from job site to job site during the workday, must be counted as hours worked. Where an employee is required to report at a meeting place to receive instructions or to perform other work there, or to pick up and to carry tools, the travel from the designated place to the work place is part of the day's work, and must be counted as hours worked regardless of contract, custom, or practice. If an employee normally finishes his work on the premises at 5 p.m. and is sent to another job which he finishes at 8 p.m. and

3

>is required to return to his employer's premises arriving at 9 p.m., all of the time is working time. However, if the employee goes home instead of returning to his employer's premises, the travel after 8 p.m. is home-to-work travel and is not hours worked.

29 C.F.R. 785.39 states that certain time spent traveling away from an employee's home community is compensable but does not state that any and all travel away from a home community is compensable.  29 C.F.R. 785.39 specifically provides that:

>Travel that keeps an employee away from home overnight is travel away from home. Travel away from home is clearly worktime when it cuts across the employee's workday. The employee is simply substituting travel for other duties. The time is not only hours worked on regular working days during normal working hours but also during the corresponding hours on nonworking days. Thus, if an employee regularly works from 9 a.m. to 5 p.m. from Monday through Friday the travel time during these hours is worktime on Saturday and Sunday as well as on the other days. Regular meal period time is not counted. As an enforcement policy the Divisions will not consider as worktime that time spent in travel away from home outside of regular working hours as a passenger on an airplane, train, boat, bus, or automobile.

Per 29 C.F.R. 785.39, travel away from the home community is compensable only when it cuts across the employee's workday, including the employee's normal work hours on weekends.  The regulation explicitly excludes from worktime any time spent as a passenger in an automobile.  Therefore, Plaintiff's statement that Defendant did not compensate Opt-In Plaintiffs for every minute of travel time does not necessarily render Defendant liable under the FLSA.

Throughout Plaintiff's motion, Plaintiff offers the anecdotal testimony of one or two Opt-In Plaintiffs for the proposition that no disputed material facts remain on a particular issue as to all of the Opt-In Plaintiffs.  Such paltry evidence cannot support a finding of a Defendant-wide policy or practice of denying compensation to Opt-In Plaintiffs in general for the purposes of a summary judgment motion.  *See Khalid v. DJ Shirley 1 Inc.*, 2018

4

U.S. Dist. LEXIS 230700, at *18 (E.D.N.Y. June 26, 2018) ("Conclusory statements of anecdotal individual violations lack the kind of precision and detail from which the Court might infer a uniform policy on the part of the [defendants] to deny compensation to their employees.") (internal citations omitted).

### a. Plaintiff has not established that Defendant violated 29 C.F.R. § 785.38

Plaintiff argues that Defendant violated 29 C.F.R. § 785.38 and that there are no disputed material facts on this point. Plaintiff's primary claim in support of this argument is that Opt-In Plaintiffs "were required to report to a Rhinehart yard prior to departing for the job to which Rhinehart assigned them for the day or week." (Resp. to St. Facts at ¶¶ 46-48). In attempting to support this claim in his Statement of Facts, Plaintiff conveniently misconstrues Brandon Rhinehart's testimony regarding local jobs to make generalized statements about Rhinehart's jobs in general. (Resp. to St. Facts at ¶ 48).

Plaintiff's claim that every laborer/operator had to go to a Rhinehart yard in Maryland or Pennsylvania every day or weekend is not true. Laborers/operators were not required to report to a Rhinehart yard or shop before each job, either on a daily or weekly basis. (Resp. to St. Facts at ¶¶ 46-47). Most of Rhinehart's laborers/operators have never been to one of Rhinehart's three shops or yards. (Resp. to St. Facts at ¶ 46). There are only three "shops" or "yards" that Rhinehart maintains. They are in Middle River, Maryland; Manchester, Maryland; and Fredonia, Pennsylvania. (Resp. to St. Facts at ¶ 44). It is simply not the case that laborers/operators that work in Massachusetts, for example, were required to drive to Maryland or Pennsylvania each day or week to drop off tools. (Resp. to St. Facts at ¶¶ 46-48).

There is a locked trailer available at each job site wherein laborers/operators can keep their tools during nights and weekends. (Resp. to St. Facts at ¶ 47). Most laborers/operators did, in fact, store their tools in the trailer at the job site during off-hours. (Resp. to St. Facts at ¶ 47). As Rhinehart provided the tools to its laborers/operators, it expected them to leave their tools in the trailer. (Resp. to St. Facts at ¶ 47).

Plaintiff also claims that Defendant violated 29 C.F.R. § 785.38 in relation to all of the Opt-In Plaintiffs because one deponent claimed he was not compensated for "intraday travel from one worksite to the other." Importantly, Mr. Dailey testified that at least part of that time was compensated (Resp. to St. Facts at ¶ 51) and that he was only speaking for himself, and not on behalf of other workers. (Resp. to St. Facts at ¶ 52). The anecdotal evidence of one Opt-In Plaintiff of one occasion on which he claims he was not paid "intraday travel" is insufficient to find there is no genuine issue of material fact as to the claims of all Opt-In Plaintiffs. *See Khalid*, 2018 U.S. Dist. LEXIS 230700, at *18. In addition, Brandon Rhinehart specifically testified that time spent traveling from one job site to another is paid. (Resp. to St. Facts at ¶ 52).

Lastly, Plaintiff makes the unsupported claim that "it is undisputed that Rhinehart had a policy under which it did not compensate for any travel time to a prevailing-rate job at all." Again, this is not supported by the evidence. Rhinehart does not have a policy that no travel time is paid on prevailing rate jobs. (Resp. to St. Facts at ¶ 58). Opt-In Plaintiffs' testimony confirms this as do documents. (Resp. to St. Facts at ¶ 28). For example, on Mr. Cullen's eSub time report, paid travel time is listed for multiple prevailing rate jobs. (Resp. to St. Facts at ¶ 59). On Mr. Dailey's report, there are also instances of paid travel time on prevailing rate jobs. (Resp. to St. Facts at ¶ 60).

Plaintiff has not, and cannot, demonstrate the lack of any disputed material facts on the Opt-In Plaintiffs' claims under 29 C.F.R. § 785.38.

**b. Plaintiff has not established that Defendant violated 29 C.F.R. § 785.39**

One aspect of this lawsuit is not in dispute – employees who travel away from their home community may be entitled to compensation. However, per the applicable regulation, not all travel away from the home community is compensable work time. 29 C.F.R. § 785.39. *See, for example, Bassett v. TVA*, 2013 U.S. Dist. LEXIS 83203, at *18-28 (W.D.Ky. June 13, 2013) (plaintiffs can only recover for travel that occurred during regular working hours on working days or corresponding hours on nonworking days); *Troutt v. Stavola Bros.,* 905 F. Supp. 295, 301 (M.D.N.C. 1995) (plaintiff was only entailed to compensation for out of town weekend travel documented to have occurred during plaintiff's normal working hours).

It is certainly undisputed that the Opt-In Plaintiffs in this matter received travel pay. In his motion, Plaintiff cannot and has not asserted that Rhinehart never pays travel time as he did in the Complaint because that is simply not the case. Records show that travel time was often paid. (Resp. to St. Facts at ¶ 62).

After months of discovery, Plaintiff clearly realizes that travel time was often paid to the Opt-In Plaintiffs. In fact, one deponent could only recall one specific occasion on which he believes he had compensable travel time that was unpaid. (Resp. to St. Facts at ¶ 34). Plaintiff tries to get around the inconvenient fact that Rhinehart regularly paid travel time by alleging that Plaintiffs are "required to work around the clock." That is not true. Rhinehart's website advertises that it is open 24/7 so that customers can call the owners at any time to alert Rhinehart to a potential emergency situation. (Resp. to St.

Facts at ¶ 11, 49). Any after-hours phone calls go only to Rhinehart's owners and management. (Resp. to St. Facts at ¶ 49). When that occurs, the most common immediate response is that Rhinehart creates a plan with the customer to address the emergency. (Resp. to St. Facts at ¶ 49). Laborers/operators are not regularly called to get out of bed at all hours to travel to a job site; such an occurrence is extremely rare. Beginning a job is much more logistically complicated than that. Most often, after an emergency is reported, work may begin the next business day or even later depending on the situation. (Resp. to St. Facts at ¶ 49).

In an attempt to establish liability despite the lack of undisputed evidence of compensable travel time that was unpaid, Plaintiff cites *Mendez v. Radec Corp.* to support his contention that that all hours were working hours for the Opt-In Plaintiffs and therefore every minute of travel time is compensable. 232 F.R.D. 78 (W.D.N.Y. 2005). *Mendez* does not support Plaintiff's position, but rather Defendant's.

In *Mendez*, the defendant argued that the plaintiffs had no regular working hours and therefore were not entitled to any travel time pay for jobs outside of the plaintiffs' home communities. *Id*., at *24. The defendant claimed that because plaintiffs might be expected to work any hour of the day or night, it was impossible for the plaintiffs to travel during normal working hours. *Id*. The Court disagreed and found that "at least with respect to individual jobs, [the plaintiffs] did have normal working hours. *Id.*

The Court rejected the notion that the plaintiffs did not have normal working hours despite an agreement between the parties that from job to job, the normal working hours could vary dramatically. *Id.*, at *26-27. An example given in that case was a job in which the employees were not allowed onto the job site until 7 p.m. The Court stated that the

8

wide variation did "not mean [] that there was no such thing as "normal working hours" for [the plaintiffs]." The example of a job with a 7 p.m. start time "itself recognizes that for any given project, there *would* be "normal working hours." *Id.*, at *27 (emphasis original). And if the plaintiffs "traveled to the site of an out-of-town project during those hours, on jobs where they were expected to stay overnight, then they were entitled to be paid for their travel time to and from those sites." *Id.* (emphasis added).

As in *Mendez*, Rhinehart's job sites each have a schedule. While the normal working hours are 7 a.m. to 3 p.m. in the majority of jobs, that may vary. (Resp. to St. Facts at ¶¶ 12, 49). But it remains true that each job site has its own normal working hours. The fact that the schedule may vary from job to job does not mean that the Opt-In Plaintiffs have no regular working hours as Plaintiff suggests. It means that the Opt-In Plaintiffs' regular working hours may change during their employment as in *Mendez*. Accordingly, the compensability of the Opt-In Plaintiffs' travel time changes based on those normal working hours and the time the travel is completed.

As Plaintiff's only argument in favor his argument that Defendant violated 29 C.F.R. § 785.39 is that the Opt-In Plaintiffs had no normal work hours, which is clearly contradicted by the facts and the very case law Plaintiff cites, Plaintiff has not carried his burden proving that no disputed material facts remain on this claim.

### c. Plaintiff has not established he is entitled to liquidated damages

In light of the discussion herein regarding Plaintiff's failure to establish that Defendant violated any FLSA provisions, it is inappropriate to find Plaintiff is entitled to liquidated damages at this time.

Should the Court consider Plaintiff's argument despite his failure to establish his entitlement to summary judgment on any of his claims, the Court should find that liquidated damages are not warranted here. While the FLSA provides for liquidated damages in many cases, a district court can deny an award of liquidated damages "where the employer shows that, despite its failure to pay appropriate wages, it acted in subjective good faith with objectively reasonable grounds for believing that its act or omissions did not violate [the] FLSA." *Williams v. Epic Sec. Corp.*, 358 F. Supp. 3d 284, 303 (S.D.N.Y. 2019).

Here, should Rhinehart be found to be liable for any unpaid wages to the Opt-In Plaintiffs, liquidated damages should not be awarded. The records show that Rhinehart regularly paid travel time. (Resp. to St. Facts at ¶ 62). If there was an occasional mistake in an employee's payroll, it does not mean that Rhinehart did not generally act in good faith and have reasonable grounds to believe it did not violate the FLSA. This is not a case where there is a clear violation of the law. This is a case where the record reflects instance after instance of paid travel time. Plaintiff's broad statements about Rhinehart's liability are not supported by the evidence Plaintiff has presented.

Rhinehart also took steps to ensure its practices complied with the law. As described in Richard Rhinehart's deposition testimony, he specifically recalls a conversation with an investigator from the Department of Labor during which he asked questions regarding Rhinehart's travel pay practices. (Resp. to St. Facts at ¶ 56). In addition, Rhinehart's payroll administrator, Paychex, is also a resource for questions related to pay practices. Rhinehart representatives meet annually with a Paychex representative, and Rhinehart is free to ask questions about pay practices to seek

Paychex's guidance. (Resp. to St. Facts at ¶ 61). Richard Rhinehart recalls one such meeting in which travel time was raised so that Rhinehart could again ensure it was adhering to applicable laws and regulations. (Resp. to St. Facts at ¶ 61).

Given the relevant facts in this matter, liquidated damages are not warranted.

## CONCLUSION

Plaintiff's motion fails to establish the lack of material facts in dispute. Rather, Plaintiff's motion highlights the vast differences between the parties' accounts of the facts. Given the multitude of material facts that remain in dispute, summary judgment is not appropriate here. Plaintiff's motion should be denied in its entirety.


Dated: August 4, 2020
      Rochester, New York

                            UNDERBERG & KESSLER LLP

                            By: */s/Alina Nadir*_____
                                Alina Nadir, Esq.
                                Paul F. Keneally, Esq.
                                *Attorneys for Defendant*
                                300 Bausch & Lomb Place
                                Rochester, New York 14614
                                Telephone: (585) 258-2800