UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

JAMES DIEFFENBAUCH, individually
and on behalf of all similarly situated

       Plaintiff(s),
 -against-            8:17-CV-1180 (LEK/CFH)

RHINEHART RAILROAD
CONSTRUCTION, INC.,

      Defendant.

## MEMORANDUM-DECISION AND ORDER

**I. INTRODUCTION**

James Dieffenbauch (the "Named Plaintiff") brought this action on behalf of himself and all similarly situated against Rhinehart Railroad Construction, Inc. Dkt. No. 1 ("Complaint"). In the Complaint, Named Plaintiff alleges Defendant violated the Fair Labor Standards Act (the "FLSA"), 29 U.S.C. §§ 201 et seq. See generally id. Named Plaintiff specifically asserts that, by not compensating travel time, Defendant violated § 207(a)(1), an FLSA provision governing overtime pay.

Before the Court is Defendant's motion to decertify the § 216(b) collective action. Dkt. No. 77-4 ("Motion"). Named Plaintiff opposes the Motion. Dkt. No. 105 ("Opposition"). Defendant filed a reply. Dkt. No. 111 ("Reply").

For the reasons discussed below, the Court denies Defendant's Motion.

**II. BACKGROUND**

 **A. Factual History**

This Court summarized Named Plaintiff's factual allegations in its Memorandum-Decision and Order granting conditional certification of an FLSA collective action, familiarity

with which is assumed. See Dkt. No. 38 ("August 2018 Memorandum-Decision and Order"). For convenience, the Court briefly summarizes Named Plaintiff's allegations here.

Named Plaintiff worked for Defendant, a railroad construction and maintenance provider, as an operator and laborer from June 2016 to October 2017. Compl. ¶¶ 4, 8, 11. Defendant allegedly failed to pay Named Plaintiff for travel "from home to an assigned project location" and "from an assigned project location back to home site." Id. ¶ 17. Though Defendant's railroad workers receive overtime for time spent working on job sites when they have already worked forty hours in a week, they would not receive overtime in all cases for travel time. Id. ¶¶ 21–22.

"To date, 43 of Defendant's current and former [r]ailroad [w]orkers have [opted] into this action to pursue their unpaid wages." Opp. at 4.[1] "Four plaintiffs were deposed during discovery as a representative sample of the Opt-In Plaintiffs[.]" Mot. at 4. The four plaintiffs are: Hugh Cullen, Kenneth Hites, Travis Dailey, and Karen Fuller. See Dkt. No 77-1, Ex. A ("Cullen Deposition"); id., Ex. B ("Hites Deposition"); id., Ex. C ("Dailey Deposition"); id. Ex. D ("Fuller Deposition").[2] Cullen, Hites, and Dailey are former employees of Defendant, while Fuller is the sister of a deceased former employee of Defendant. See Mot. at 4–9.

**B. Procedural History**

Plaintiff initiated this action by filing the Complaint on October 23, 2017. Docket. On August 30, 2018, this Court granted Plaintiff conditional certification as an FLSA collective

---

[1] The Court refers to these individuals collectively as the "Opt-In Plaintiffs."

[2] Where the Court cites to these depositions, it uses the deposition pagination, not the page numbers from CM/EFC, the Court's electronic filing system.

action. See generally Aug. 2018 Mem.-Decision and Order. The conditionally certified class consists of:

> All persons employed by Rhinehart Railroad Construction, Inc. as "Railroad Workers" ("Operators/Laborers") in Pennsylvania, North Carolina, New York, Massachusetts, and/or Maryland from October 2014 to the present, who worked more than forty (40) hours per week and were paid an hourly rate but were not paid for travel time from: (a) their home to an assigned project location; (b) one assigned project location to another assigned project location; and/or (c) an assigned project location[] back to their home.

Id. at 12.

### III. LEGAL STANDARD

"An action . . . may be maintained against any employer . . . in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." § 216(b).

"Courts within the Second Circuit apply a two-step process to determine whether an action should be certified as a FLSA collective action." Williams v. TSU Global Servs. Inc., No. 18-CV-72, 2018 U.S. Dist. LEXIS 198813, at *9 (E.D.N.Y. Nov. 20, 2018) (citing Myers v. Hertz Corp., 624 F.3d 537, 554–55 (2d Cir. 2010)). First, a court may conditionally certify an FLSA suit as a collective action upon "a modest factual showing" that the named and opt-in plaintiffs "together were victims of a common policy or plan that violated the law." Myers, 624 F.3d at 555 (quoting Hoffmann v. Sbarro, Inc., 982 F. Supp. 249, 261 (S.D.N.Y. 1997)). Next, at step two, a court "determine[s] with the benefit of a fuller record whether the opt-in plaintiffs are in fact 'similarly situated' to the named plaintiffs." Pino v. Harris Water Main & Sewer Contrs. Inc., No. 17-CV-5910, 2020 U.S. Dist. LEXIS 174934, at *8 (E.D.N.Y. Sept. 23, 2020) (quoting Myers, 624 F.3d at 555).

"Neither the FLSA nor its implementing regulations define 'similarly situated.'" Summa v. Hofstra Univ., 715 F. Supp. 2d 378, 385 (E.D.N.Y. 2010) (citing Hoffmann, 982 F. Supp. at 261). But the Second Circuit has said that "to be 'similarly situated' means that named plaintiffs and opt-in plaintiffs are alike with regard to some material aspect of their litigation." Scott v. Chipotle Mexican Grill, Inc., 954 F.3d 502, 516 (2d Cir. 2020) (citing Campbell v. City of Los Angeles, 903 F.3d 1090, 1114 (9th Cir. 2018)), cert pending.

## IV. DISCUSSION

### A. The "Similarly Situated" Standard

First, this Court must further hone step two's "similarly situated" requirement. In briefing decertification, both Plaintiff and Defendant deployed an ad hoc standard that asks courts to consider: (1) the "disparate factual and employment settings of the individual plaintiffs"; (2) "defenses available to defendants which appear to be individual to each plaintiff"; and (3) "fairness and procedural considerations." See Mot. at 11; Opp. at 13. At least before Scott, this approach was deployed by "[t]he majority of courts in this Circuit[.]" Scott, 954 F.3d at 517.

But a court in this Circuit found that Scott "expressly rejected" this ad hoc approach "because [the approach] focused on 'the ways in which the plaintiffs are factually *disparate* and the defenses are *individualized*' instead of 'considering the ways in which the opt-in plaintiffs are *similar* in ways material to the disposition of their FLSA claims." Foster v. City of New York, No. 14-CV-4142, 2020 U.S. Dist. LEXIS 204588, at *73 (S.D.N.Y. Oct. 30, 2020) (quoting Scott, 954 F.3d at 517) (emphasis in original); see also id. at *74 (referring to Scott as "the controlling standard"). Another court in this Circuit has continued to apply the ad

hoc factors, even under Scott, in assessing whether plaintiffs are "similarly situated." Pino, 2020 U.S. Dist. LEXIS 174934, at *15–18. Still another has noted the open question of "whether the *ad hoc* test remains a viable tool in this circuit." Vecchio v. Quest Diagnostics, Inc., No. 16-CV-5165, 2020 U.S. Dist. LEXIS 171513, at *39 (S.D.N.Y. Sept. 18, 2020).[3]

Because of this ambiguity, the Court will apply both tests. See Foster, 2020 U.S. Dist. LEXIS 204588, at *74 (assessing decertification under Scott and the ad hoc framework).

**B. Application**

The Court finds that, under either test, Named Plaintiff and the Opt-In Plaintiffs are "similarly situated."

   *1. Scott*

Under Scott, the Court asks whether Named Plaintiff and Opt-In Plaintiffs "share a similar issue of law or fact material to the disposition[.]" Scott, 954 F.3d at 516. The Court finds that they do.

With regard to factual similarities, each plaintiff to be deposed testified that Defendant did not compensate them for all of their travel time. See Cullen Dep. at 14–15, 26; Hites Dep. at 33; Dailey Dep. at 46–47; Fuller Dep. at 14, 29; see also Dkt. No. 105-1 at 11, 16. All plaintiffs "share similar roles and responsibilities," Worley v. City of New York, No. 17-CV-4337, 2020 U.S. Dist. LEXIS 32931, at *59 (S.D.N.Y. Feb. 26, 2020), as laborers and

---

   [3] The Vecchio court did not attempt to resolve the uncertainty because it found no "material similarity" between the named and opt-in plaintiffs—a requirement it found encompassed both by the ad hoc test and under Scott. Vecchio, 2020 U.S. Dist. LEXIS 171513, at *39.

operators. See, e.g., Fuller Dep. at 19. Each was routinely assigned to traveling jobs.[4] See, e.g., Fuller Dep. at 23–24. Plaintiffs testified that they were not paid for travel time on "prevailing wage"[5] jobs under a policy of Defendant. See, e.g., Cullen Dep. at 15. On other jobs, they were allegedly paid for only one leg of their journey. See, e.g., Dailey Dep. at 46. And the number of Opt-In Plaintiffs deposed—four, or over nine percent of the group—suggests that the deponents' experience is representative of the collective. See Vecchio, 2020 U.S. Dist. LEXIS 171513, at *44 (noting that deposition samples below three percent of the collective action have been found representative).

Named Plaintiff and Opt-In Plaintiffs have similar applicable legal issues as well. Specifically, they are all beneficiaries of Defendant's FLSA-imposed obligation to pay overtime. See § 207(a)(1) ("[N]o employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."); see also Foster, 2020 U.S. Dist. LEXIS 204588, at *75 ("And, with respect to legal issues, Plaintiffs share, for example, the City's obligation under the FLSA to pay for all overtime about which it had knowledge, regardless if pre-approved or not.").

---

[4] Defendant "considers a job a 'traveling' job when the Railroad Worker stays overnight someplace other than their home, in a hotel or motel, while working on the job." Opp. at 8.

[5] "A prevailing wage job refers to a job on which [Defendant's] customer is a governmental entity that is required by statute or by the contract, or both, to pay certain rates, also known as prevailing rates, to the employees who perform work on the job." Opp. at 7.

Defendant alleges that it "does not have a 'No Pay for Travel' policy." Mot. at 3; see also id. at 12 ("Discovery has shown there is no consistent practice or policy at Rhinehart to fail to pay compensable time."), 19 ("The lack of a uniform illegal policy or practice and the testimony provided in the Opt-In Plaintiffs' depositions make clear that individualized inquiries abound in this matter."). However, "the extent, existence, and lawfulness of these company-wide policies are issues for the finder of fact at trial, they are issues that are subject to generalized proof." Alonso v. Uncle Jack's Steakhouse, Inc., No. 08-CV-7813, 2011 U.S. Dist. LEXIS 106356, at *11–12 (S.D.N.Y. Sept. 21, 2011) (denying decertification).

In the Reply, Defendant attempts to re-litigate whether Plaintiff has established "a common policy or plan that operated to common effect[.]" Reply at 2. But the "common policy or plan" requirement pertains to step one, the conditional certification stage. See Myers, 624 F.3d at 555 (quoting Hoffmann, 982 F. Supp. at 261). This Court has already determined that Named Plaintiff and Opt-In Plaintiffs were subject to the same "allegedly infringing policy." Aug. 2018 Mem.-Decision and Order at 7. The Court will not revisit this finding at step two, which focuses on whether Named Plaintiff and the Opt-In Plaintiffs are "similarly situated." Myers, 624 F.3d at 555.

Under Scott, only a single common issue of law or fact related to the disposition of an FLSA claim is required to deny decertification. See Foster, 2020 U.S. Dist. LEXIS 204588, at *80 (emphasizing that one commonality suffices). Named Plaintiff and Opt-In Plaintiffs clear this hurdle.

### 2. Ad Hoc Inquiry

The Court next turns to the ad hoc inquiry called into question by Scott. As discussed

above, under this framework, courts examine: (1) the disparity or similarity of factual and employment settings of the individual plaintiffs; (2) defenses available to defendants which appear to be individual to each plaintiff; and (3) fairness and procedural considerations weighing for or against collective action treatment. See Foster, 2020 U.S. Dist. LEXIS 204588, at *81.

### a. Disparity or Similarity of Factual and Employment Settings

"To certify a collective action under § 216(b), plaintiffs need only show that their positions were similar, not identical." Shabazz v. Morgan Funding Corp., 269 F.R.D. 245, 251 (S.D.N.Y. 2010). The Court finds that the similarities in factual and employment settings between Named Plaintiff and Opt-In Plaintiffs outweigh the disparities. All members had similar work responsibilities as hourly railroad workers. See Opp. at 15–16; see also Foster, 2020 U.S. Dist. LEXIS 204588, at *81 (noting, in approving of an FLSA collective action, that plaintiffs "have the same basic job duties").

To show that individual consideration is necessary, Defendant lists an array of factors needed "[t]o determine [its] liability[.]" Mot. at 14. These factors include "the working hours of each particular job" and "if the plaintiff was, in fact, already compensated for travel time". Id. However, courts have found the existence of such individualized determinations "unavailing" in assessing whether collective treatment is warranted. See Perry v. City of New York, No. 13-CV-1015, 2019 U.S. Dist. LEXIS 40696, at *20 (S.D.N.Y. Mar. 13, 2019) (rejecting defendants' argument that individualized inquiries are required).

This Court agrees that Defendant's "focus on differences among Plaintiffs is precisely the problem the Second Circuit sought to redress by rejecting the ad hoc approach" in Scott.

Foster, 2020 U.S. Dist. LEXIS 204588, at *87. Accordingly, this factor weighs in favor of denying decertification.

### b. Individualized Defenses

Neither is decertification warranted on the basis of individualized defenses. Defendant asserts that "[e]ach Opt-In Plaintiff testified to alleged different travel practices as far as departure times, driving their own vehicles or riding as passengers, different understandings of the 'policy' regarding travel time, different alleged statements by their Supervisors, and the varying nature of each job." Mot. at 16–17. But these considerations are more relevant to an analysis of damages. See Foster, 2020 U.S. Dist. LEXIS 204588, at *89–90 (finding the existence of individualized defenses—including supervisor knowledge of each alleged violation—did not merit decertification because those arguments were related to damages); see also Lassen v. Hoyt Livery, Inc., No. 13-CV-1529, 2014 U.S. Dist. LEXIS 129784, at *17 (D. Conn. Sept. 17, 2014) ("The fact that putative collective-action members performing similar work and subject to a common compensation policy may be owed different damages does not suggest that such individuals are not sufficiently similarly situated for FLSA purposes.").

### c. Fairness and Procedural Considerations

The Court turns to the final ad hoc factor: fairness and procedural considerations. The United States Supreme Court has identified "the advantage of lower individual costs to vindicate rights by the pooling of resources" as a purpose of the FLSA collective action. Hoffmann-La Roche Inc., 493 U.S. 165, 170 (1989). Allowing Named Plaintiff and Opt-In Plaintiffs to proceed as one will allow for the more effective vindication of rights. See Scott, 954 F.3d at 516; Foster, 2020 U.S. Dist. LEXIS 204588, at *75–76. And "[l]itigating overtime

claims for each of these Plaintiffs individually would be burdensome on Plaintiffs, Defendants, and the courts." McGlone v. Contract Callers, Inc., 49 F. Supp. 3d 464 (S.D.N.Y. Aug. 25, 2014) (denying decertification of nineteen opt-in plaintiffs).

In conclusion, even under the ad hoc framework, the Court finds that Named Plaintiff and Opt-In Plaintiffs are sufficiently "similarly situated" to avoid decertification.

## V.   CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Defendant's motion to decertify (Dkt. No. 77-4) is **DENIED**; and it is further

**ORDERED**, that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:    February 03, 2021
          Albany, New York

Lawrence E. Kahn
U.S. District Judge