UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

JAMES DIEFFENBAUCH, individually
and on behalf of all similarly situated

                      Plaintiff(s),
   -against-                                     8:17-CV-1180 (LEK/CFH)

RHINEHART RAILROAD
CONSTRUCTION, INC.,

                      Defendant.

## MEMORANDUM-DECISION AND ORDER

**I.    INTRODUCTION**

James Dieffenbauch (the "Named Plaintiff") brought this action on behalf of himself and all similarly situated against Rhinehart Railroad Construction, Inc. Dkt. No. 1 ("Complaint"). In the Complaint, Named Plaintiff alleges Defendant violated the Fair Labor Standards Act (the "FLSA"), 29 U.S.C. §§ 201 et seq. See generally id. Named Plaintiff specifically asserts that, by not compensating travel time, Defendant violated § 207(a)(1), an FLSA provision governing overtime pay.

Before the Court is Plaintiffs' motion for summary judgment. Dkt. No. 78-1 ("Motion").[1] Plaintiffs seek summary judgment on four issues: (1) that they were not properly compensated for travel under 29 C.F.R. § 785.38; (2) that they were not properly compensated for travel under 29 C.F.R. § 785.39; (3) that Defendant's violations of those regulations resulted in weeks in which Plaintiffs worked more than forty hours but did not receive overtime pay; and (4) that Defendant cannot show good-faith compliance with the FLSA to avoid the

---

[1] Pages 4–18 of the Motion contain Plaintiffs' statement of material facts. See Mot. at 4–18. In this Memorandum-Decision and Order, the Court cites to that portion of the Motion as "Plaintiffs' Statement of Material Facts" or "Plaintiffs' SMF".

imposition of liquidated damages. See Mot. at 1–2.

Defendant opposes the Motion. Dkt. Nos. 90 ("Opposition"), 90-3 ("Defendant's Statement of Material Facts" or "Defendant's SMF"); 90-2 ("Richard Rhinehart Affidavit").[2]

For the reasons discussed below, the Court denies Plaintiffs' Motion.

## II. BACKGROUND

### A. Factual History

The following facts are undisputed, except where otherwise noted.

#### 1. The Parties

Named Plaintiff and the forty-three others who have opted in to this lawsuit are current and former employees of Defendant.[3] See Pls.' SMF ¶ 2; Def.'s SMF ¶ 2.

Defendant is in the business of building and maintaining railroad tracks across the United States. See Pls.' SMF ¶ 1; Def.'s SMF ¶ 1.

#### 2. Plaintiffs' Job Functions

Plaintiffs shared the same primary duties: building and repairing railroad tracks. See Pls.' SMF ¶ 3; Def.'s SMF ¶ 3. Depending on a customer's needs, the Plaintiffs were assigned to work either as operators or laborers. See Pls.' SMF ¶ 4; Def.'s SMF ¶ 4. Both roles involved manual labor. See Pls.' SMF ¶ 5; Def.'s SMF ¶ 5. Plaintiffs were paid by the hour.

---

[2] Plaintiffs argue that the Richard Rhinehart Affidavit is "self-serving" and therefore "insufficient to preclude summary judgment[.]" Dkt. No. 93 ("Reply") at 2. "However, there is nothing wrong with self-serving affidavits and declarations, provided they are supported by the facts in the record and satisfy the usual requirements for affidavits and declarations . . . . The self-serving nature of testimony raises a credibility issue for the factfinder, not an admissibility issue for the court." 11 MOORE'S FEDERAL PRACTICE - CIVIL § 56.94[3].

[3] In this Memorandum-Decision and Order, the Court refers to the forty-three individuals who opted in as the "Opt-In Plaintiffs" and to all plaintiffs collectively simply as "Plaintiffs".

See Pls.' SMF ¶ 7; Def.'s SMF ¶ 7. Supervisors inputted hours worked into an application known as eSub. See Pls.' SMF ¶ 40; Def.'s SMF ¶ 40.

Plaintiffs assert that their "work hours varied wildly from one day to the next." Pls.' SMF ¶ 12. Defendant notes that "[e]ach job typically had its own schedule" and that "[i]n rare circumstances, a particular job's work schedule was in the evening." Def.'s SMF ¶ 12. In any event, Plaintiffs' work schedules were set each week during a weekly conference call by Richard and Brandon Rhinehart, Defendant's vice president and secretary, respectively. See Pls.' SMF ¶ 14; Def.'s SMF ¶ 14; see also Dkt. No. 78-2, Ex. A ("Richard Rhinehart Deposition") at 16; id., Ex. H ("Brandon Rhinehart Deposition") at 20.[4] Unexpected "emergency situations" could cause deviations from the set schedule. See Pls.' SMF ¶ 17; Def.'s SMF ¶ 17.

Each job was classified as either prevailing wage or non-prevailing wage. See Pls.' SMF ¶ 20; Def.'s SMF ¶ 20. According to Plaintiffs, "[a] prevailing wage job refers to a job on which [Defendant's] customer is a governmental entity that is required by statute or by the contract, or both, to pay certain rates, also known as prevailing rates, to the employees who perform work on the job." Pls.' SMF ¶ 21. Defendant's records reflected whether each job paid the prevailing wage. See Pls.' SMF ¶ 22; Def.'s SMF ¶ 22.

### 3. Travel Practices and Compensation

Plaintiffs were required to travel to the job sites to which they were assigned. See Pls.' SMF ¶ 26; Def.'s SMF ¶ 26. Plaintiffs assert, and Defendant disputes, that they were not

---

[4] Where the Court cites to deposition testimony, it refers to the deposition pagination, not the page numbers generated by CM/ECF.

compensated for all of their hours worked. See Pls.' SMF ¶ 8 (citing Dkt. No. 78-2, Ex. G ("Cullen Deposition") at 14); Def.'s SMF ¶ 8. Specifically, Plaintiffs argue that they were not compensated for all of their travel time, and as a result, they "routinely" worked more than forty hours in a week without receiving overtime pay. See Pls.' SMF ¶ 10. Defendant denies this. See Def.'s SMF ¶ 10.

The parties dispute whether Plaintiffs were required to report to one of Defendant's three yards–two of which are in Maryland and one of which is in Pennsylvania—to collect tools before departing for a job. Compare Pls.' SMF ¶ 46 with Def.'s SMF ¶ 46.

Defendant has no written policy regarding travel time compensation. See Pls.' SMF ¶ 27; Def.'s SMF ¶ 27. Plaintiffs argue that, under an unwritten policy, Defendant compensated only one-way travel on non-prevailing wage jobs and did not compensate travel at all on prevailing wage jobs. See Pls.' SMF ¶ 28. Defendant disputes this. See Def.'s SMF ¶¶ 28, 33. Plaintiffs complained about travel time compensation to their supervisors. See Pls.' SMF ¶ 34. Plaintiffs assert that prevailing wage travel time was compensated only on one occasion and to only one employee after a particularly vocal complaint. See Pls.' SMF ¶ 37.

**B. Procedural History**

Named Plaintiff initiated this action by filing the Complaint on October 23, 2017. Docket. On August 30, 2018, this Court granted conditional certification as an FLSA collective action. See generally Aug. 2018 Mem.-Decision and Order. The conditionally certified class consisted of:

> All persons employed by Rhinehart Railroad Construction, Inc. as "Railroad Workers" ("Operators/Laborers") in Pennsylvania, North Carolina, New York, Massachusetts, and/or Maryland from October 2014 to the present, who worked more than forty (40) hours per

> week and were paid an hourly rate but were not paid for travel time from: (a) their home to an assigned project location; (b) one assigned project location to another assigned project location; and/or (c) an assigned project location[] back to their home.

Id. at 12. Plaintiffs filed their Motion on July 7, 2020. See Docket. On February 3, 2021, this Court denied Defendant's motion to decertify the class. See Dkt. No. 114.

### III.  LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure instructs courts to grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law," and a dispute is "'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Thus, while "[f]actual disputes that are irrelevant or unnecessary" will not preclude summary judgment, "summary judgment will not lie if . . . the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.; see also Taggart v. Time, Inc., 924 F.2d 43, 46 (2d Cir. 1991) ("Only when no reasonable trier of fact could find in favor of the nonmoving party should summary judgment be granted.").

The party seeking summary judgment bears the burden of informing the court of the basis for the motion and identifying those portions of the record that the moving party claims will demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Similarly, the movant is entitled to summary judgment when the nonmoving party has failed "to establish the existence of an element essential to [the movant's] case, and on which [the movant] will bear the burden of proof at trial." Id. at 322.

In attempting to repel a motion for summary judgment after the moving party has met its initial burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). At the same time, a court must resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). Hence, "a court's duty in reviewing a motion for summary judgment is 'carefully limited' to finding genuine disputes of fact, 'not to deciding them.'" Macera v. Vill. Bd. of Ilion, No. 16-CV-668, 2019 U.S. Dist. LEXIS 169632, at *26 (N.D.N.Y. Sept. 30, 2019) (Kahn, J.) (quoting Gallo v. Prudential Residential Servs., Ltd.. P'ship, 22 F.3d 1219, 1224 (2d Cir. 1994)).

## IV. DISCUSSION

### A. 29 C.F.R. § 785.38

"The FLSA, as clarified through the Department of Labor regulations, counts time traveling that is 'part of [an employee's] principal activity, such as travel from job site to job site during the workday,' as hours worked." Local 589, Amalgamated Transit Union v. Mass. Bay Transp.Auth., 94 F. Supp. 3d 47, 55 (D. Mass. 2015) (quoting 29 C.F.R. § 785.38).

Plaintiffs argue that they were not properly compensated for travel that was "all in the day's work" under 29 C.F.R. § 785.38, which provides:

> Time spent by an employee in travel as part of his principal activity, such as travel from job site to job site during the workday, must be counted as hours worked. Where an employee is required to report at a meeting place to receive instructions or to perform other work there, or to pick up and to carry tools, the travel from the designated place to the work place is part of the day's work, and must be counted as hours worked regardless of contract, custom, or practice. If an employee normally finishes his work on the premises at 5 p.m.

>and is sent to another job which he finishes at 8 p.m. and is required to return to his employer's premises arriving at 9 p.m., all of the time is working time. However, if the employee goes home instead of returning to his employer's premises, the travel after 8 p.m. is home-to-work travel and is not hours worked.

29 C.F.R. § 785.38.

### *1. Travel Between Meeting Place and Job Site*

Plaintiffs argue that "it is undisputed that Plaintiffs were required to report to a Rhinehart yard prior to departing for the job to which Rhinehart assigned them for the day or week." Mot. at 19. And Plaintiffs assert that "Defendant failed to compensate Plaintiffs for the time it took them to travel from the work site back to the yard *unless* it was within some undefined 'normal working hours.'" Id. at 20 (emphasis in original). Because the record contains a genuine dispute of material fact as to whether Plaintiffs were indeed required to report to a yard of Defendant before traveling to a job site, the Court denies summary judgment on this issue.

"Courts deciding whether to compensate employees for travel time from designated meeting points to a worksite have primarily considered whether employees' presence at the meeting point was required by the employer and what types of duties employees were required or requested to perform at the meet site." McCann v. W.C. Pitts Constr. Co., No. 10-CV-52, 2011 U.S. Dist. LEXIS 101107, at *10 (S.D. Miss. Sept. 7, 2011) (collecting cases).

Defendant's vice president swore that "[m]ost laborers/operators have never even been to one of Rhinehart's shops or yards." Richard Rhinehart Aff. ¶ 61. He also swore that "[l]aborers/operators are not required to go back to one of Rhinehart's three shops or yards at the end of each day or prior to going home for a weekend." Id. ¶ 59.

Plaintiffs respond that Richard Rhinehart "bald[l]y asserts" these purported facts "without offering any evidence to refute Plaintiffs' testimony that they did, in fact, report to Defendant's yard to store their tools when they finished work for the day or week." Reply at 2. But an affidavit is sufficient to create a genuine dispute of material fact under Rule 56. See Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact . . . is genuinely disputed must support the assertion by: citing to particular parts of materials in the record, including . . . affidavits[.]"); see also supra n.2. Because Richard Rhinehart is Defendant's vice president, the Court infers that he has personal knowledge as to employees' routines. See Woods v. Amazon.com, No. 17-CV-4339, 2020 U.S. Dist. LEXIS 115003, at *9 (N.D. Ill. July 1, 2020) ("[A]n affiant's personal knowledge may be inferred from the affidavit itself, and in determining whether to make such an inference, the Court can consider a variety of factors, including the position of the affiant as well as his involvement in the matters he testifies to.").

Plaintiffs also rely on Hayes v. New York City Dep't of Corrections, 84 F.3d 614 (2d Cir. 1996), to support their argument that the Richard Rhinehart Affidavit cannot allow Defendant to overcome summary judgment. See Reply at 3. But Hayes dealt with whether a court should permit an affidavit to defeat summary judgment when that affidavit "by omission or addition, contradicts the affiant's previous deposition testimony." Hayes, 84 F.3d at 619. While Plaintiffs highlight one apparent contradiction in the Richard Rhinehart Affidavit, see Reply at 2, they do not appear to argue that Richard Rhinehart has contradicted his sworn statements regarding meeting points.

Because the parties dispute whether Plaintiffs were required to report to a meeting point—namely, one of Defendant's three yards—prior to traveling to a job site, the Court

denies summary judgment on this issue. See Gortat v. Capala Bros., 257 F.R.D. 353, 360 (E.D.N.Y. 2009) ("Summary judgment of the FLSA claim must be denied because the parties dispute whether the defendant employers required the plaintiffs to report to work at the Greenpoint shop by 7:00 a.m. or whether the employees had the option to report directly to the work sites in Manhattan.").

### 2. *Intraday Travel Between Job Sites*

Plaintiffs next argue that "it is undisputed that Defendant did not compensate Plaintiffs for all intraday travel from one worksite to the other." See Mot. at 20; see also id. at 21 ("Similarly, any intraday travel, whether it be transporting a truck between job sites, or traveling to the next job in the same day, is compensable travel time."). The Court again disagrees and denies summary judgment.

As noted by Plaintiffs, see Mot. at 20, time spent traveling between worksites must be counted in an employee's hours under the regulation. See 29 C.F.R. § 785.38.[5] But Defendant points out that "Brandon Rhinehart testified that Rhinehart, as a policy, pays laborers/operators for time spent traveling from one job site to another." Def.'s SMF ¶ 52.

In apparent response, Plaintiffs write that "Brandon Rhinehart did acknowledge that at least some intraday travel was not compensated." Reply at 6 (citing Brandon Rhinehart Dep. at 38). But the statement Plaintiffs refer to came in response to a question about the compensation of travel from job site to meeting point, not the compensation of travel between job sites. See Brandon Rhinehart Dep. at 37–38 ("And similarly on the way back at the end of the day, if

---

[5] Plaintiffs mistakenly cite to 29 C.F.R. § 785.39 in a pair of instances in which they seem to refer to 29 C.F.R. § 785.38. See Mot. at 19–20.

they're going—if they're not going straight from the job site to their home, but rather they're going from the job site back to a meeting point, whether it be the shop or a meet—any area where they're getting off a vehicle that transports them all and what—they're supposed to get paid for that travel time back to the meeting point; right?").

Because a genuine dispute of material fact exists as to whether Plaintiffs were compensated for time spent traveling between job sites, the Court cannot grant summary judgment on this issue either.

In sum, though Plaintiffs allege Defendant violated 29 C.F.R. § 785.38, the record contains genuine disputes of material fact as to Defendant's practices. In the face of such disputes, it is not for the Court to decide at this stage whether Plaintiffs were required to report to a meeting point before a job site, or whether Plaintiffs were compensated for time spent traveling between jobs. Accordingly, the Court cannot find as a matter of law that Defendant violated the regulation.

### B. 29 C.F.R § 785.39

Plaintiffs also argue that they were not properly compensated for "travel away from [their] home community" under 29 C.F.R. § 785.39, which provides:

> Travel that keeps an employee away from home overnight is travel away from home. Travel away from home is clearly worktime when it cuts across the employee's workday. The employee is simply substituting travel for other duties. The time is not only hours worked on regular working days during normal working hours but also during the corresponding hours on nonworking days. Thus, if an employee regularly works from 9 a.m. to 5 p.m. from Monday through Friday the travel time during these hours is worktime on Saturday and Sunday as well as on the other days. Regular meal period time is not counted. As an enforcement policy the [Wage and Hour Division] will not consider as worktime that time spent in travel away from home outside of regular working hours as a

10

passenger on an airplane, train, boat, bus, or automobile.

29 C.F.R. § 785.39. Defendant agrees that "employees who travel away from their home community may be entitled to compensation." Opp. at 7.

In interpreting § 785.39, a court has found that "travel time is compensable when it cuts across: 1) an employee's workday and 2) an employee's regular working hours on nonworking days." Bassett v. TVA, No. 09-CV-39, 2013 U.S. Dist. LEXIS 83203, at *22 (W.D. Ky. June 13, 2013). On the other hand, "[t]ravel time is *not* compensable when: 1) it occurs outside of the employee's regular working hours, whether on working or nonworking days, or 2) the employee is a passenger on a common carrier and his travel occurs during his regular working hours on nonworking days." See id. at *22–23; see also 1 WAGES & HOURS: LAW AND PRACTICE § 6.03[6] ("[O]vernight trips made during nonworking hours are noncompensable, except to the extent that any employee is required to perform work while engaged in such travel.").

### 1. "Normal Working Hours"

Because the compensability of away-from-home travel time hinges on whether it occurred during "normal working hours" or "the corresponding hours on nonworking days[,]" see § 785.39, the Court must examine Plaintiffs' work schedules. Plaintiffs argue that, since they "could be called upon to work at any hour of the day on any given day, travel to work away from their community for an overnight stay should be considered 'normal working hours,' regardless of the time they traveled to the distant sites." Mot. at 22.[6] Defendant argues

---

[6] In essence, Plaintiffs argue that, because they did not have "normal working hours," *all* of their time constituted "normal working hours." See Reply at 8 ("Inasmuch as Plaintiffs' normal work hours were 24 hours per day, 7 days per week, any time Plaintiffs were required to travel, by

11

that "[l]aborers/operators are not regularly called to get out of bed at all hours to travel to a job site; such an occurrence is extremely rare." Opp. at 8.

Despite Plaintiffs' assertion that "Defendant has done nothing to dispute . . . the around the clock nature of Defendants' business and Plaintiffs' work hours," Reply at 8, Defendant has succeeded in creating a genuine dispute of material fact regarding Plaintiffs' "normal working hours." Compare Pls.' SMF ¶ 49 with Def.'s SMF ¶ 49; see also Opp. at 8. Accordingly, the Court cannot grant Plaintiffs summary judgment on the issue of whether Defendant violated § 785.39.

### 2. *Defendant's Alleged Travel Policies*

Even if the Court were to adopt Plaintiffs' around-the-clock characterization of their

---

definition, was required to be recorded, and compensated."). The Department of Labor has issued guidance to employers on ascertaining compensable travel time when "certain employees do not have normal work hours." See DOL Wage & Hour Opinion Letter FLSA2018-18 (Apr. 12, 2018), https://www.dol.gov/sites/dolgov/files/WHD/legacy/files/2018_04_12_01_FLSA.pdf.

> There are different methods that an employer may use to reasonably ascertain an employee's normal work hours for purposes of determining compensable travel time under 29 C.F.R. § 785.39. One permissible method is to review the employee's time records during the most recent month of regular employment. If the records reveal typical work hours, the employer may consider those as the normal hours going forward unless some subsequent material change in circumstances indicates the normal hours have changed. If the records do not reveal any normal working hours, the employer may instead choose the average start and end times for the employee's workdays. As another alternative, in the rare case in which employees truly have no normal work hours, the employer and employee (or the employee's representatives) may negotiate and agree to a reasonable amount of time or timeframe in which travel outside of employees' home communities is compensable.

Id. None of these methods suggest that the proper way to treat employees with varying hours is to consider every hour of every day as within "normal working hours."

12

"normal working hours," it would not grant summary judgment because the record does not clearly show Defendant violated § 785.39. See 1 WAGES & HOURS: LAW AND PRACTICE § IV[a] (noting that, in an FLSA collective action, "Plaintiffs bear the ultimate burden to prove . . . a violation of statutory standards").

Plaintiffs argue "it is undisputed that Rhinehart had a policy under which it did not compensate for any travel time to a prevailing-rate job at all, and to only compensate one-way travel despite of the fact that Plaintiffs were required to report back to a Rhinehart yard to unload their tools." Mot. at 21. The Court first examines Defendant's travel compensation practices on prevailing wage jobs before turning to non-prevailing wage jobs.

### a. Prevailing Wage Jobs

The Court does not find that Defendant violated the FLSA as a matter of law with respect to prevailing wage jobs. First, though Plaintiffs assert that Defendant had a no-pay-for-travel policy on those jobs, the Court finds that there is a genuine dispute of material fact regarding the existence of such a policy. Richard Rhinehart swore that "Rhinehart does not have a written or unwritten policy specifically regarding travel on prevailing rate jobs." Richard Rhinehart Aff. ¶ 49. He also swore that Defendant "does not have a policy that no travel time is paid on prevailing rate jobs." Id. ¶ 50. The Court cannot resolve a genuine dispute regarding the existence of an alleged policy on summary judgment.

Second, regardless of whether such a policy exists, the Court cannot find that Plaintiffs were never compensated for travel on prevailing wage jobs. Plaintiff Travis Dailey testified at his deposition that "[n]ormally we did not" receive any compensation for travel time on prevailing wage jobs. See Dkt. No. 78-2, Ex. D ("Dailey Deposition") at 91. But Defendant

directs the Court to three instances on which Dailey was paid for travel time on apparently prevailing wage jobs. See Richard Rhinehart Aff., Ex. D ("Dailey Records") at 175 (April 22, April 26, and May 9, 2018 entries). Defendant has also submitted evidence showing that Plaintiff Hugh Cullen was routinely compensated for travel time on prevailing wage jobs. See Richard Rhinehart Aff. ¶ 51.

Plaintiffs state it "is not [their] position that Defendant did not pay any travel time under any circumstances." Reply at 8 n.7. Rather, "[i]t is [Plaintiffs'] position that Defendant did not compensate for all of the travel time necessary in accordance with the law." Id. Specifically, Plaintiffs focus heavily on Defendant's alleged failure to compensate Dailey for travel from a non-prevailing wage job in New York to a prevailing wage job in Boston. See Pls.' SMF ¶ 52; Reply at 6. In response, Defendant offered only testimony that Dailey was paid travel time for the reverse journey from Boston to New York. See Richard Rhinehart Aff. ¶¶ 55–56. Neither party references a November 28, 2018 entry showing eight hours of travel time paid to Dailey, see Dailey Records at 178, evidence that could suggest Dailey was compensated for some New York-to-Boston travel.[7] See Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record."). And Dailey testified that "we always got paid job to job," meaning for travel between jobs. See Dailey Dep. at 48.

Because the record is ambiguous as to whether and when Plaintiffs were compensated for travel time on prevailing wage jobs, the Court could not grant summary judgment even if it

---

[7] The New York-to-Boston leg typically took "four to six hours," according to Dailey. See Dailey Dep. at 122. The November 28, 2018 entry could therefore mean that Dailey traveled from New York to Boston and back and was compensated for both legs of the trip.

assumed all hours were "normal working hours."

### b. Non-Prevailing Wage Jobs

The Court turns to travel compensation on non-prevailing wage jobs and again finds that Plaintiffs have not met their burden to prove a violation. Here, Plaintiffs argue that "[p]ursuant to its unwritten policy . . . Rhinehart only compensates its hourly-paid Railroad Workers, including Plaintiffs, for one-way travel[.]" Mot. at 11. But they fail to point the Court to even a single instance of uncompensated travel time on a non-prevailing wage job. Accordingly, Plaintiffs have not met their burden of showing a violation of the FLSA, and summary judgment is denied.

### C. Liquidated Damages

Because the Court does not find as a matter of law that Defendant violated either § 785.38 or § 785.39, it does not reach the issue of whether Plaintiffs are entitled to liquidated damages. See Marin v. JMP Restoration Corp., No. 09-CV-1384, 2012 U.S. Dist. LEXIS 136498, at *35 n.7 (E.D.N.Y. Aug. 24, 2012) ("[T]he plaintiffs have not established any FLSA violation and thus their motion for summary judgment as to FLSA liquidated damages should be denied for the same reason.").

V.  **CONCLUSION**

Accordingly, it is hereby:

**ORDERED**, that Plaintiffs' motion for summary judgment (Dkt. No. 78-1) is **DENIED**; and it is further

**ORDERED**, that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED: February 25, 2021
Albany, New York

Lawrence E. Kahn
U.S. District Judge